# L. P. WARREN, Appellant, v. W. T. COWDEN, Respondent.

**Springfield Court of Appeals, December 2, 1912.**

1. **ANIMALS: Running at Large: Taking Up: Notice to Owner: Replevin.** In an action in replevin to recover a cow which defendant had taken up and claimed damages and compensation from the plaintiff under the "stock law," it appeared that plaintiff had had actual notice of the taking up of the cow and that the parties could not agree on the amount of damages claimed. *Held*, that no written notice to the plaintiff was necessary under Sec. 773, R. S. 1909. *Held*, further, that the fact that the defendant had given a written notice which did not comply with the requirements of Sec. 772, R. S. 1909, did not change his rights under the law.

2. ——: ——: ——: ——. Defendant took up and restrained plaintiff's cow which had entered into and damaged his cornfield and subsequently gave plaintiff a written notice in an attempt to comply with Sec. 772, R. S. 1909, but this notice is *held* defective because it does not specify the amount of compensation for feeding and keeping such animal and damages claimed.

3. **TENDER: Deposit in Court: Replevin: Instructions.** In an action in replevin to recover plaintiff's cow which defendant had taken up and refused to deliver until the damages which he claimed had been paid, it appeared that defendant offered to accept $1.50 in settlement of his claim and that on the same day this amount was tendered to defendant which was then refused. *Held*, that the trial court committed material error in giving an instruction which authorized a recovery by the plaintiff without his first having deposited $1.50, the amount which he admitted would be due the defendant by his tender, or without instructing the jury to return a verdict for defendant for that amount in case they found for the plaintiff as to the other issues.

4. **PRACTICE: New Trial: Granting by Court on Own Motion.** A trial court may notice on its own motion an error in the giving of instructions and grant a new trial on that account even though the party in whose favor the new trial is granted save no exceptions to the giving of such instructions.

5. **APPEAL AND ERROR: New Trial: Order Granting May be Sustained.** When an appeal has been taken from the granting of a new trial and reasons have been assigned by the trial

court for its action, although these reasons are found by the appellate court to be unsound, yet if there be good reasons appearing on the record for granting a new trial, the order granting it will be upheld.

Appeal from Polk Circuit Court.—*Hon. C. H. Skinker,* Judge.

AFFIRMED.

*Rechow & Pufahl* for appellant.

(1) The plaintiff was entitled to the peremptory instruction to find the issues for him. Secs. 772, 773, 774, 775, and 815, R. S. 1909; Crook v. Peebly, 8 Mo. 344; Wright v. Richmond, 21 Mo. App. 76; Howlett v. Erie., 79 Mo. App. 660; Gates v. Crandall, 123 Mo. App. 414. (2) A person taking up animals must show that all the prerequisites of the law have been complied with. He must show the performance of all the acts which the law required to be performed in order to vest the property in him. Crook v. Peebly, 8 Mo. 344; Wright v. Richmond, 21 Mo. App. 76; Gates v. Crandall, 123 Mo. App. 414. (3) Only two grounds are assigned by the trial court for sustaining defendant's motion for a new trial. The grounds not mentioned are deemed overruled. Connally v. Pehle, 105 Mo. App. 417; Bennett v. Mining Co., 110 Mo. App. 320; Candee v. Railroad, 130 Mo. 153; Millar v. Car Co., 130 Mo. 522; Itner v. Hughes, 133 Mo. 688; Bradley v. Reppell, 133 Mo. 560; Real Estate Co. v. McDonald, 140 Mo. 612; Haven v. Railroad, 155 Mo. 224; Crawford v. Stock Yards Co., 215 Mo. 394.

*B. J. Emerson* and *L. Cunningham* for respondent.

(1) Plaintiff was not entitled to recover possession of his animal until he paid the damages. Evans v. Holman, 202 Mo. 284. (2) The verdict was against the weight of the evidence and it is the province of

the trial court to set the same aside and grant a new trial. Roscoe v. Railroad, 202 Mo. 591; Taylor v. Railroad, 163 Mo. 191; Haven v. Railroad, 155 Mo. 216; Baughman v. Fulton, 139 Mo. 557; Bank v. Wood, 124 Mo. 72; Bank v. Armstrong, 92 Mo. 265; McKay v. Underwood, 47 Mo. 187; Vastine v. Rex, 93 Mo. App. 93; Everman v. Eggers, 106 Mo. App. 732. (3) The verdict in this case was against the law and the weight of the evidence and unless the court be satisfied of the justice of the verdict, he should set it aside. McVey v. Barker, 92 Mo. App. 498; Ridge v. Johnson, 129 Mo. App. 541; McDaniel v. Bryan, 123 Mo. App. 640; Roscoe v. Railway Co., 202 Mo. 576; Evans v. Holman, 202 Mo. 284.

NIXON, P. J.—This is an action in replevin originating in a justice's court. On appeal, plaintiff obtained judgment, and the court, on motion, granted the defendant a new trial. From this order, plaintiff appealed.

On August 6, 1911, plaintiff's cow entered the premises of the defendant and damaged defendant's corn. The defendant restrained her and claimed damages and compensation from the plaintiff under Art. 5, Ch. 6 of the Revised Statutes of 1909, concerning "animals restrained from running at large." The parties agreed that this law was in force in Polk county, the scene of the action. Section 772 of this article provides that domestic animals running at large may be restrained, and lays down a rule as to giving the owner of the animal written notice within three days of the taking up and requiring the notice to state the amount of compensation for feeding and keeping such animal or animals and damages claimed. Section 773 is as follows. "*When notice not necessary.*— If it shall appear and be proven on trial that the owner or owners of such domestic animals, as set forth in section 772, shall have actual notice that his or their

said animals or stock were restrained, and by whom, and that the parties interested could not agree on the amount of damages claimed, then the three days' notice as required by section 772 shall not be necessary to a recovery.''

The evidence in this record shows that defendant restrained plaintiff's animal on the evening of August 6, 1911 (Sunday), and personally notified plaintiff, who resided nearby. We quote from defendant's testimony: ''The weather was hot and dry and I told him (plaintiff) I would like for him to come and get the cow. He wanted to know what the damage was and I told him that I would charge him a dollar or what the law allowed to putting her up and for the damages; I thought the allowed fifty cents for putting one up but I found out later that it was only twenty-five. He said all right; he made no objection whatever. He said he did not have the money but he would do whatever was right about it. I said, 'I have been turning your stock over to you and you have been promising to pay me but you have never paid me a cent.' In fact I had been turning his stock over to him time and again and I told him that. He said he did not have the money but would borrow it. I told him that while he was doing that—it was only a short time before this when I had turned over to him his stock and he promised to pay me and he never paid me a cent or said a word about it—couldn't he borrow that other, too, and bring it, and then he flew mad and said he wouldn't do it; he said he was fixing to go to Buffalo and would be gone about four days; that he wanted me to milk the cow and take care of her and that when he came back he would come and settle. I said, 'By that time I don't know what might happen.' After he got mad he would not give me any satisfaction and I came on home and allowed he would come and get the cow. If he had come and done the right thing I would have

turned the cow over to him; if he had come with the money."

The plaintiff's version is as follows: "On Sunday, August 6, Mr. Cowden, the defendant, came and told me that he had taken up my cow. I said, 'I do not want my cow on my neighbors,' and asked him if she had damaged him and he said she had. I said, 'What is the damage?' He said, 'Well, I reckon about a dollar will pay the damages.' I said, 'Well, that is not too much but I haven't got the money. I will go out and get it and come back and get my cow.' He said, 'When you go to get that, fetch me another dollar and fifty cents for the damages for the time your cow was on my oats.' I said, 'I will pay you the other money like I agreed to pay it when I get so that I can and when you get some men to assess the damages, and whatever the men say I will pay whether it is one dollar and fifty cents or five dollars.' He said, 'I will hold your cow for that.' I said, 'You cannot do it.' He said, 'I will show you whether I can or not.' Then I said, 'Take good care of the cow as she is giving lots of milk.' He said, 'I will do just as I please about it.' And then I went off and never talked to Mr. Cowden any more that time."

It is apparent to any one that no agreement was reached between these parties and hence section 773 is the governing statute in this case. This being true, no written notice was necessary as required by section 772.

Defendant fed, watered and milked the cow on Monday. On the morning of this day defendant was in Goodson, a town nearby, and a man named Tom Gladdon saw him and told defendant he had a dollar for him to settle the matter but defendant refused to accept it at that time and said plaintiff could get the cow at any time that day by paying two dollars.

On Tuesday morning about seven o'clock, defendant sent his son to plaintiff with the proposition that

he would accept one dollar and fifty cents. This was before he fed and milked the cow. Defendant testified that plaintiff told the boy that he (plaintiff) would sue his father for damages. About eleven o'clock the same morning, defendant was again in town and two men acting for plaintiff offered defendant a dollar and fifty cents, one of them stating that he had a dollar in his pocket and the other stating that he had fifty cents. Defendant refused, saying that he had kept the cow two or three days, and that he would take two dollars as his damages.

At this stage of the controversy, defendant, after consulting a lawyer and a justice of the peace, decided that he should give plaintiff a written notice, and on this day (Tuesday) he delivered the following notice to plaintiff's wife:

"Goodson, Missouri, August 8, 1911.
"Mr. L. P. Warren:

"I herewith notify you that I have got your cow up and you can come and pay damages and you can take her.

"Yours,
"W. T. Cowden."

In giving this notice, defendant was evidently attempting to comply with section 772, but if that section governed this case he would be out of court because he did not specify in the notice "the amount of compensation for feeding and keeping such animal and damages claimed." Of course, it need hardly be said that the fact that he attempted to give a written notice as required by section 772 would not change his rights under the law. [Bowles v. Abrahams, 65 Mo. App. 10.]

The defendant then applied to a justice of the peace for the appointment of appraisers, following section 774, and they met on August 12, viewed the damage, and made a written report in duplicate assess-

ing the sum of twenty-five cents for taking up the animal, fifty cents for damages, and twenty-five cents for each day the cow was in defendant's care—a total assessment of two dollars and twenty-five cents.

In the meantime—on August 8—plaintiff instituted an action in replevin before a justice for the recovery of the cow. The verdict in the justice's court was for the defendant and was signed by four of the jurors. In the circuit court, by agreement, the case was tried by a jury of six men, and five of them signed the verdict for the plaintiff. Eleven instructions were given to the jury and five requested instructions were refused.

The jury were instructed that it was admitted that plaintiff was the owner of the cow and that the issues should be found for the plaintiff unless they found and believed from the evidence "that said cow on the sixth day of August, 1911, was running at large outside the inclosure of the plaintiff and was trespassing upon the premises of the defendant and that the defendant took up said cow and that he, the defendant, thereupon gave notice in writing to plaintiff that he had taken up said cow, and in said notice stated the amount of damages claimed by him and the amount of compensation for feeding and keeping said cow; or else that the plaintiff had actual notice that said cow was restrained and by whom restrained and that he, the plaintiff, and the defendant could not agree upon the amount of damages demanded."

As we have stated, the jury found the issues for the plaintiff. In its order granting defendant a new trial the court specified two grounds, viz.: (1) Because the court erred in giving instructions I, II, III and IV in favor of the plaintiff. (2) Because the verdict of the jury is against the law and the weight of the evidence.

On the state of the evidence as to what occurred between the plaintiff and the defendant on Tuesday,

Warren v. Cowden.

August 8, 1911, the court gave the following instruction:

"If the defendant sent the plaintiff word by his son that he would take one dollar and a half for his damages, and the plaintiff on the same day and before the defendant had been to any further expense or trouble in caring for and feeding said cow, offered to pay the amount asked by the defendant, then there was nothing to arbitrate and you must find the issues for the plaintiff."

We think this instruction was too favorable if anything for the plaintiff, and in case of retrial, if the plaintiff shall have deposited with the trial court the sum of one dollar and fifty cents, the following instruction should be given in its place:

"If the defendant sent the plaintiff word by his son that he would take one dollar and fifty cents for his damages and compensation, and the plaintiff on the same day and within a reasonable time accepted the offer and on the same day tendered the one dollar and fifty cents, the amount asked by the defendant, then there was nothing to arbitrate and you will find the issues for the plaintiff."

Instructions I, II and III were given by the court at plaintiff's request and defendant saved no exception. The court gave instruction IV of its own motion and defendant saved no exception. Defendant himself could therefore make no complaint because of the giving of these instructions, and the question is raised whether the court may notice of its own motion a supposed error in the giving of these instructions and grant a new trial on that account. That it may is established by many authorities. [Head v. Randolph, 83 Mo. App. l. c. 287; Ewart v. Peniston, 233 Mo. l. c. 707, 136 S. W. 422; Parker v. Britton, 133 Mo. App. 273, 113 S. W. 259; Lovell v. Davis, 52 Mo. App. 342; Baughman v. National Waterworks Co., 58 Mo. App. 576; 29 Cyc. 921.]

The evidence in this record does not present a case that required the defendant to proceed under the stray law. Further, the reasons assigned by the court in its order granting a new trial, under the view we have taken, were wholly insufficient to authorize the granting of the same. We are of the opinion, however, that material error was committed by the trial court in authorizing a recovery by the plaintiff without his having first deposited one dollar and fifty cents, the amount he admitted to be due the defendant by his tender, or without instructing the jury to return a verdict for defendant for that amount in case they found for the plaintiff as to the other issues. In cases like the present where an appeal has been taken from the granting of a new trial and reasons have been assigned by the trial court for its action, although these reasons are found by the appellate court to be unsound, yet if there be good reasons appearing on the record for granting a new trial, the order granting it will be upheld. [Green v. Terminal Railroad Ass'n, 211 Mo. 18, 109 S. W. 715; Smart v. Kansas City, 208 Mo. 162, 105 S. W. 709.]

We think the order granting a new trial should be affirmed, and it is so ordered. All concur.